The Honorable Jim Hill State Senator 100 Center Nashville, AR 71852-3821
Dear Senator Hill:
You have requested an Attorney General opinion concerning certain issues related to county funds.
You have presented the following questions:
(1) Should the County Clerk or the Treasurer print the checks?
 (2) Is it necessary to present an ordinance to the Quorum Court as to the answer to Question 1?
 (3) Does the County Clerk need to sign the original check or the duplicates in order to provide certification?
 (4) Can a County Treasurer pay a Deputy Treasurer's salary or a portion thereof out of the Treasurer's Automation Fund?
RESPONSE
Question 1 — Should the County Clerk or the Treasurer print the checks?
It is my opinion that unless the county has officially assigned this responsibility to the county treasurer, it is the responsibility of the county clerk.
This issue is governed by A.C.A. § 14-24-204, which states in full:
 (a)(1) It is the intent of this subchapter that, after a claim has been properly presented to a county court with a proper certification and itemization thereof, as provided by law, the county clerk may cause a check to be prepared in payment of the claim. This check must be accompanied by an attached certification from the clerk stating that he check is for payment of a valid claim against the county, properly presented and allowed, as provided by law, the check being presented to the county treasurer for his signature, such check being in triplicate snap-out form, allowing for the following information and distribution:
 (A) Original check, after being transmitted to the treasurer for his signature, will be delivered to the party presenting the claim to the treasurer;
 (B) Duplicate copy of the check, which will provide the printed certification thereon by the clerk to the treasurer and provide for the original signature of the clerk on the certification, will be maintained by the treasurer;
 (C) Triplicate copy of the check, and attached certification which is a part thereof, will be maintained by the clerk, with all supporting documentation for such payment being filed with this copy.
 (2) The checks shall be prenumbered and designed in such form that the specific appropriation applicable and particular fund affected out of which the check is to be paid is noted thereon.
 (b) In lieu of the provisions of this section pertaining to the issuance of a three-part check, if a county so chooses, the following provisions may apply:
 (1) Once the aforementioned claim procedures have been completed, the treasurer may cause a check to be prepared in payment of claims filed with the county court;
 (2) Each claim properly docketed and approved for payment by the county court shall be proper certification from the clerk to the treasurer that a valid claim exists;
 (3) The checks shall be prenumbered and so designed that the specific appropriation applicable, particular fund affected, and claim number shall be noted thereon.
A.C.A. § 14-24-204.
Under the plain language of the above-quoted statute, county clerks are required to print checks for the payment of claims, unless the county has, pursuant to Section (b), assigned that responsibility to the county treasurer.
Question 2 — Is it necessary to present an ordinance to the Quorum Courtas to the answer to Question 1?
It is my opinion that if a county chooses to assign the county treasurer the responsibility of printing checks, pursuant to A.C.A. §14-24-204(b), it is necessary for the quorum court of that county to enact an ordinance, resolution, or motion reflecting the county's decision to assign that responsibility to the county treasurer. However, it is my opinion that it is not necessary for the county to pass an ordinance, resolution, or motion charging the county clerk with that responsibility.
I base this conclusion on the fact that A.C.A. § 14-24-204 plainly assigns the responsibility of printing checks, in the first instance, to the county clerk. Because this charge is made by state law, it does not require county action. However, the statute does require county action in the event that the county chooses to follow the alternative procedure of Section (b). Counties act by passing ordinances, resolutions, or motions. A.C.A. § 14-14-904. Therefore, if a county is to express its intent to follow Section (b), it must do so by way of ordinance, resolution, or motion. The procedure set forth in Section (b) will be compulsory only if the county passes an ordinance. A.C.A. §14-14-904(i)(j)(k) (ordinances are compulsory, resolutions express non-compulsory statements of policy, and motions propose executive action).
Question 3 — Does the County Clerk need to sign the original check or theduplicates in order to provide certification?
It is my opinion that it is not necessary for the county clerk to sign either the original check or the duplicates in order to provide certification. Under the applicable statute, A.C.A. § 14-24-204 (quoted above in response to Question 1), the clerk clearly must sign the required certification that the check is in payment of a valid claim. However, the statute refers to the clerk's certification as being "attached" to the check. This language indicates that the certification is a separate document from the check. The statute only requires the clerk to sign the certification; it does not require the clerk to sign the check, or any copies of the check.
Question 4 — Can a County Treasurer pay a Deputy Treasurer's salary or aportion thereof out of the Treasurer's Automation Fund?
It is my opinion that if the deputy treasurer performs duties that constitute the maintenance and operation of an automated accounting and record-keeping system for the county, and if it is possible to determine separately the proportion of the deputy treasurer's salary that can be attributed to such duties, that amount of the deputy treasurer's salary can be paid from the Treasurer's Automation Fund.
The Treasurer's Automation Fund was created by Act 108 of 1999, which is codified at A.C.A. § 21-6-302. The pertinent provisions of that statute state:
 (d)(1) The treasurer may set aside up to ten percent (10%) of the gross commissions collected annually to be credited to the county treasurer's automation fund to be used to purchase, maintain, and operate an automated accounting and record-keeping system.
 (2) The acquisition and update of software for the automated accounting and record-keeping system shall be permitted uses of these funds.
 (3) Moneys deposited in this fund may accumulate and shall be appropriated and expended for the uses designated in this section by the quorum court at the direction of the treasurer.
A.C.A. § 21-6-302(d).
Although the language of the above-quoted statute does not explicitly address the use of the fund to pay for salaries, its statement of the permissible use of the fund is nevertheless couched in terms that are broad enough to encompass the payment of salaries that are in compensation for duties devoted to the stated permissible use.
Accordingly, I conclude that if it is possible to determine the amount of the deputy treasurer's salary that is attributable to duties that are devoted to the maintenance and operation of an automated accounting and record-keeping system for the county, that portion of the deputy treasurer's salary can be paid from the fund.
It should be noted that in accordance with A.C.A. § 21-6-302(d)(3) and with A.C.A. § 14-14-1203(1), the quorum court must specifically appropriate the portion of the deputy treasurer's salary that is to be paid from the Treasurer's Automation Fund.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh